[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 18-13902

_____

D.C. Docket No. 2:16-cv-14072-RLR

VIOLA BRYANT,

Plaintiff-Appellant,

versus

KEN MASCARA, et al.,

Defendants-Appellees.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

(March 17, 2020)

Before MARTIN, GRANT, and LAGOA, Circuit Judges.

MARTIN, Circuit Judge:

On January 14, 2014, Gregory Hill, Jr., was shot and killed in his home

garage by St. Lucie County Sheriff's Office Deputy Christopher Newman. Viola

Bryant, Mr. Hill's mother, brought a lawsuit on his behalf against Deputy Newman

and St. Lucie County Sheriff Ken Mascara in his official capacity. A jury in the

Southern District of Florida found Deputy Newman not liable under 42 U.S.C. § 1983 and found that Sheriff Mascara was only 1% responsible for the shooting. As a result, Ms. Bryant recovered nothing from the lawsuit. She now appeals, raising a number of objections to the conduct of the trial.

After careful review, and with the benefit of oral argument, we reverse and remand for a new trial.

## I.

In January 2016, Ms. Bryant, acting as representative of Mr. Hill's estate, filed a complaint in the Nineteenth Judicial Circuit Court in St. Lucie County, Florida, against Sheriff Mascara and Deputy Newman. The complaint alleged violations of the Fourth and Fourteenth Amendments pursuant to 42 U.S.C. § 1983, as well as two state law claims for negligence and a state law claim for battery. The defendants removed the case to the District Court in the Southern District of Florida.

Before trial, Ms. Bryant moved pursuant to Federal Rules of Evidence 401, 403, and 404(b) to suppress evidence that Mr. Hill was on probation. Ms. Bryant pointed out that, at the time of the shooting, Deputy Newman did not know that Mr. Hill was on probation. Thus, she argued that evidence of his probationary status was not relevant to whether Newman's use of force was reasonable. She also argued that this evidence was unduly prejudicial under Rule 403 and was

2

inadmissible character evidence under Rule 404(b). The District Court denied the motion, reasoning that "Mr. Hill's probation status could add credibility to the Defendant Newman's claim that Mr. Hill opened the garage door with a gun in his hand and then slammed the garage door down because having a gun would violate his probation."

Trial began on May 17, 2018, and lasted six days. The parties do not dispute that the following facts were proved at trial: On January 14, 2014, at approximately 3:15 p.m., Deputy Newman shot and killed Mr. Hill in Hill's home garage. Earlier that day, Mr. Hill had been in his garage listening to music. Responding to a noise complaint from a parent at the elementary school across the street, Deputies Newman and Edward Lopez arrived at Mr. Hill's residence. Upon arriving at Mr. Hill's home, the deputies attempted to contact its occupants. While Deputy Newman knocked on the front door of the house, Deputy Lopez knocked on the garage door. Mr. Hill then opened his garage door.

The principal factual dispute at trial was whether Mr. Hill had a gun in his hand when he opened the garage door. Both Deputy Lopez and Deputy Newman testified that he did. Specifically, Deputy Lopez testified that, after he knocked on the garage door, Mr. Hill opened the garage door with his left hand to a point "[r]ight above [his] head." As Mr. Hill raised the garage door, Deputy Lopez looked inside and saw a gun in Hill's right hand. Deputy Lopez testified that he

3

was about three feet away from Mr. Hill when he saw the gun. When he saw the gun, Deputy Lopez yelled, "gun, gun, gun, drop the gun." He said that Mr. Hill "started to raise the gun in [his] direction." Deputy Lopez "started retreating very fast and withdrawing [his] weapon from the holster," at which point he heard Deputy Newman say, "Hey" to Mr. Hill. At about that time, Mr. Hill started to bring the garage door down. As Deputy Lopez backed away from the garage door, he heard shots ring out. Deputy Lopez said he never saw Mr. Hill point the gun at either deputy.

Deputy Newman testified that he was standing by the front door of Mr. Hill's house when Hill opened the garage door. Deputy Newman said he looked over and saw Mr. Hill with a gun in his hand. He immediately yelled, "gun, gun" and drew his firearm. He said he then yelled "drop the gun." Deputy Newman said he thought Mr. Hill was going to shoot Deputy Lopez so he yelled, "hey" to get Hill's attention. Mr. Hill then looked away from Deputy Lopez and at Deputy Newman and "started to raise the gun and bring the door down." As the door was coming down, Deputy Newman could "still see [Mr. Hill's] legs" though he "lost sight of the gun as the gun was traveling up." Deputy Newman then fired four shots through the garage door, killing Mr. Hill.

Mr. Hill's daughter, Destiny, also testified. Destiny's elementary school was located directly across the street from Mr. Hill's home. At the time of the

4

shooting, Destiny was sitting on a bench in front of the school waiting to be picked up by her uncle.  She had a clear view of the house.  She said that when the police came she saw Mr. Hill, who was sitting in a chair inside the garage, stand up and close the garage.  She said he was not holding anything in his hands when he closed the garage door.

Niles Graben, an employee of the Florida Department of Corrections, was called to testify that Mr. Hill was on probation at the time of his killing, the terms of which prohibited him from consuming alcohol and from possessing a firearm. Dr. Linda O'Neil, an associate medical examiner for the State of Florida, testified that at the time of his death, Mr. Hill's blood alcohol content could have been as high as .390 grams per deciliter.  The District Court gave the following limiting instruction as to Mr. Hill's probationary status: "Ladies and gentlemen, as you [have] heard . . . Mr. Hill was on probation.  This evidence is only admissible to the extent you think it is relevant to Mr. Hill's actions on the date of the incident. It is not to be considered for any other purpose."

The District Court also permitted Mascara and Newman to display to the jury the Kel-Tec handgun found on Mr. Hill's person after the shooting.  Over Ms. Bryant's objection, Sergeant Edgar Lebeau performed a demonstration of placing the gun in the back pocket of Mr. Hill's shorts.

5

After the close of evidence, the jury determined that Deputy Newman did not intentionally commit acts that violated Mr. Hill's right to be free from excessive force.  The jury determined that Sheriff Mascara's negligence was a legal cause of Mr. Hill's injuries, but found that because Hill was under the influence of alcohol, he was more than 50% at fault for his injuries.  It held that the total amount of damages sustained by the estate of Mr. Hill was one dollar for funeral expenses.  It also awarded one dollar in damages to each of Mr. Hill's three minor children.  The District Court entered final judgment in favor of Sheriff Mascara and Deputy Newman.

Ms. Bryant then filed a motion for a new trial, which the District Court denied.  This is Ms. Bryant's timely appeal.

## II.

We review for abuse of discretion the District Court's evidentiary rulings, including decisions regarding the admission of evidence of prior crimes under Federal Rule of Evidence 404(b).  Williams v. Mast Biosurgery USA, Inc., 644 F.3d 1312, 1316 (11th Cir. 2011); United States v. Ramirez, 426 F.3d 1344, 1354 (11th Cir. 2005) (per curiam).  We will reverse and remand for a new trial only where "substantial prejudice" resulted from the District Court's abuse of discretion.  Brochu v. City of Riviera Beach, 304 F.3d 1144, 1155 (11th Cir. 2002).

6

## III.

On appeal, Ms. Bryant claims that the District Court made a number of evidentiary errors at trial.  Here we need address only one, which independently warrants reversal and remand for a new trial.  That is the admission of evidence of Mr. Hill's probationary status at the time of his shooting.

### A.

Before trial, Ms. Bryant moved to exclude evidence of Mr. Hill's probationary status, arguing that it was irrelevant, unfairly prejudicial, and constituted inadmissible character evidence.  The District Court admitted the evidence, finding that it was "relevant to explain Mr. Hill's actions" on the day of the shooting because it "could add credibility to . . . Defendant Newman's claim that Mr. Hill opened the garage door with a gun in his hand and then slammed the garage door down because having a gun would violate his probation."  However, the District Court did not admit evidence of the nature of the underlying offense for which Mr. Hill was serving a probationary term.  Beyond that, the judge instructed the jury that Mr. Hill's probationary status was only relevant to his actions on the day of the shooting.  The District Court also denied Mr. Hill's motion for a new trial on this basis.  It held that Mr. Hill's probationary status was relevant because there was a dispute "regarding whether Mr. Hill had the gun in his hand when he answered the door."  Because the terms of Mr. Hill's probation

7

prevented him from being intoxicated or possessing a firearm, the Court concluded Mr. Hill's probationary status "was relevant in order to add credibility to Defendant Newman's version of the events" that Mr. Hill opened the garage door with the gun in his hand and closed the garage door in order to avoid being found in violation of his probation.

The District Court abused its discretion in admitting this evidence. It was prejudicial and not relevant to any disputed material fact. Federal Rule of Evidence 404(b)(1) prohibits the admission of "[e]vidence of a crime, wrong, or other act . . . to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character." However, Rule 404(b)(2) provides that such evidence "may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." Fed. R. Evid. 404(b)(2). Evidence that is admissible under Rule 404(b)(2) must still "possess probative value that is not substantially outweighed by its undue prejudice and must meet the other requirements of [R]ule 403." United States v. Beechum, 582 F.2d 898, 911 (5th Cir. 1978) (en banc).[1] Thus, evidence of past wrongdoing must withstand a two-part test to be admitted: (1) it must be relevant to an issue other than the

---

[1] In Bonner v. City of Prichard, 661 F.2d 1206 (11th Cir. 1981) (en banc), this Court adopted as binding precedent all decisions of the Fifth Circuit handed down prior to the close of business on September 30, 1981. Id. at 1207.

defendant's character and (2) it must have probative value that is not substantially outweighed by its undue prejudice.  See United States v. Terebecki, 692 F.2d 1345, 1348 (11th Cir. 1982); United States v. Ellisor, 522 F.3d 1255, 1267 (11th Cir. 2008).

Evidence of Mr. Hill's probationary status was not relevant to any issue other than Hill's character.  It therefore had no permissible probative value. Evidence is relevant if it has "any tendency to make a fact more or less probable than it would be without the evidence" and "the fact is of consequence in determining the action."  Fed. R. Evid. 401.  Here, the task of the jury was to determine whether Deputy Newman's use of force was reasonable in light of what he knew, or reasonably should have known, at the time of the shooting.  See Lee v. Ferraro, 284 F.3d 1188, 1200 (11th Cir. 2002) (holding that, in determining whether an officer's use of force was reasonable, "we look at what they knew (or reasonably should have known) at the time of the act." (quotation marks omitted)). And it was undisputed that, at the time of the shooting, Deputy Newman was responding to a noise complaint and had no knowledge that Mr. Hill was on probation.  Mr. Hill's probationary status was therefore not directly relevant to determining the reasonableness of Deputy Newman's use of force in light of facts known to Newman at the time of the shooting.

However, there are circumstances in which criminal history evidence not known to law enforcement officers at the time force was used may still be admissible under Rule 404(b) to lend support to the officers' factual claims. For example, in Knight ex rel. Kerr v. Miami-Dade County, 856 F.3d 795 (11th Cir. 2017), this Court affirmed the admission of evidence that three victims of a police shooting were on probation at the time of the shooting. Id. at 816–17. In dispute were two drastically different accounts of the shooting. According to the police officers, the decedents accelerated their vehicle backwards and towards a police officer in an attempt to flee before the officers began to fire into the vehicle. Id. at 804. In contrast, the plaintiff said that an officer shot into the car first. This caused the driver's body to slump forward and the car to accelerate in reverse. Id. The fact that three of the people in the car were on probation was relevant to prove that the victims had a motive to "initiate, and refuse to cease, flight when confronted by the [police] officers" for fear of jeopardizing their probationary status. Id. at 816. It therefore tended to support the officers' account of the shooting—that the decedents instigated the shooting by attempting to flee—over the account given by the plaintiff.

No such circumstances were present here. Unlike in Knight, there was no material fact in dispute that Mr. Hill's probationary status helped resolve. While the District Court held it was probative of Mr. Hill's motive to quickly close the

10

garage door, neither party disputed the fact that Hill first opened, and then quickly closed, his garage door before Deputy Newman opened fire.  Because there was no dispute that Mr. Hill closed the garage door, evidence that he was on probation does nothing to render more credible the testimony of Deputies Newman or Lopez on that topic.  Also, any evidence about Mr. Hill's motivation for closing the door did not make it either more or less probable that he did in fact do so.

Neither does evidence of Mr. Hill's probationary status help resolve any other facts which were in dispute at trial.  The two central factual disputes at trial were whether Mr. Hill had a gun in his hand at the time he opened his garage door and whether it was possible for Hill to place the gun in his back pocket before he was shot.  But the fact that Mr. Hill was on probation sheds no light on whether he had a gun in his hand at the time he opened his garage door.  Nor is it probative of whether it was possible for him to place the gun in his back pocket before he was killed.  And while the District Court found that Mr. Hill's probationary status may have motivated him to attempt to hide his gun in his back pocket, there is a problem with this reasoning.  Mr. Hill's probationary status could not inform his motivation to conceal the weapon in the scenario described by the officers.  No reasonable person would wish to be seen pointing a gun at police officers, regardless of their probationary status.  Thus, this evidence made neither party's account of the shooting more or less probable.

11

Since Mr. Hill's probationary status did not lend credibility to the deputies' claims about his behavior prior to the shooting, it was not relevant to any issue other than Hill's character. It therefore was not properly admitted under Rule 404(b). Even if this evidence were sufficiently relevant for purposes other than establishing Mr. Hill's character under Rule 404(b), it would still be inadmissible under Rule 403, since its minimal probative value was substantially outweighed by its prejudicial effect. See Terebecki, 692 F.2d at 1348–49. The "major function" of Rule 403 is to "exclude[] matter of scant or cumulative probative force, dragged in by the heels for the sake of its prejudicial effect." United States v. McRae, 593 F.2d 700, 707 (5th Cir. 1979). In evaluating probative value, we consider how essential the evidence is to proving a relevant point: evidence which is inessential and only introduced to bolster other evidence will be weighed less heavily against its potential prejudicial effect. See United States v. King, 713 F.2d 627, 631 (11th Cir. 1983) (recognizing that "the more essential the evidence, the greater its probative value"); United States v. Mills, 704 F.2d 1553, 1560 (11th Cir. 1983) (observing that unfairly prejudicial testimony is more likely to violate Rule 403 when it was "introduced merely to bolster the prosecution's case-in-chief"). Because Mr. Hill's probationary status was only relevant to prove a fact to which both parties agreed, its probative value was highly limited. In the following

12

section, we discuss why we came to conclude that the prejudicial effect of this evidence was high and substantially outweighed this minimal probative value.

## B.

In evaluating whether an evidentiary decision at trial affected the verdict, we consider, <u>inter alia</u>, the prejudicial effect of the evidence, the closeness of the factual disputes, and whether cautionary or limiting instructions were given to the jury. <u>Peat, Inc. v. Vanguard Research, Inc.</u>, 378 F.3d 1154, 1162 (11th Cir. 2004). Weighing these factors, we conclude that this error was sufficiently prejudicial to warrant reversal and remand for a new trial.

First, the admission of this evidence had a substantial prejudicial effect. While the reason Mr. Hill was on probation was withheld from the jury, the simple fact that he was on probation led the jury to believe that he had previously been convicted of a crime. <u>See</u> <u>United States v. Beck</u>, 625 F.3d 410, 417 (7th Cir. 2010). What's more, evidence that Mr. Hill's probation conditions prevented him from drinking alcohol or possessing a firearm also invited the jury to infer that he was actively violating the terms of his probation at the time he was shot. Indeed, the defendants made the fact that Mr. Hill was violating the terms of his probation at the time of the shooting a central piece of their defense theory, repeatedly revisiting it over the course of their closing argument. <u>See</u> <u>U.S. Steel, LLC v. Tieco, Inc.</u>, 261 F.3d 1275, 1288 (11th Cir. 2001) (holding that substantial

13

prejudice was shown where the appellees had relied on erroneously admitted evidence "throughout the trial" and "notably" during closing arguments).

The danger of such evidence is that the jury may be swayed by the conclusion that Mr. Hill was a "bad man," and therefore more likely to point a gun at police officers, instead of by the evidence before it.  See United States v. Avarello, 592 F.2d 1339, 1346 (5th Cir. 1979) (holding, in the context of criminal prosecution, that "the danger inherent in evidence of prior convictions is that juries may convict a defendant because he is a 'bad man' rather than because evidence of the crime of which he is charged has proved him guilty").  Because of this danger, such evidence is inherently prejudicial.  Beechum, 582 F.2d at 910 (noting the "inherent prejudice" of evidence of prior criminal convictions).  This is why Rule 404(b) requires its exclusion unless it is probative of a disputed, material fact other than character or propensity.

Second, the District Court's limiting instruction did not sufficiently mitigate the prejudice resulting from the admission of this evidence.  We have held that appropriate limiting instructions can "limit[] any unfair prejudice" that might result from the proper admission of evidence of prior criminal activity.  See Knight, 856 F.3d at 817.  Here, the District Court merely instructed the jury that Mr. Hill's probationary status was "only admissible to the extent that you think it is relevant to Mr. Hill's actions on the day of the incident" and that it was "not to be

14

considered for any other purpose." Given that Mr. Hill's probationary status had no relevance to resolving disputed factual issues regarding his conduct on the day of the shooting, its introduction served no purpose and only resulted in prejudice to Hill. And, even if the jury cabined its consideration of Mr. Hill's past conviction, by its own terms this instruction still permitted the jury to consider the fact that Hill was violating the terms of his probation at the time he was shot. Thus, the District Court's instruction did not sufficiently limit the unfair prejudice resulting from the introduction of this evidence.

Finally, the evidence in this case was not so one-sided as to render it "unlikely" or "remote" that the jury could have been "swayed erroneously by the wrongfully admitted evidence." Alexander v. Fulton County, 207 F.3d 1303, 1329–30 (11th Cir. 2000), overruled on other grounds by Manders v. Lee, 338 F.3d 1304 (11th Cir. 2003) (en banc). Only three witnesses testified to having seen the shooting of Mr. Hill. Deputy Newman, a defendant, and his colleague Deputy Lopez both testified that Mr. Hill had a gun in his hand when he raised his garage door. But the third witness, Destiny Hill, said she saw no gun. There was also meaningful dispute over whether it would have been possible for Mr. Hill to put the gun in his back pocket between the time he closed the door and the time of his death, which a reasonable jury could have concluded called into question the version of events offered by the defendants. One expert opined that Mr. Hill

15

would have had no motor function after his head wound because the bullet "interrupted all of the nerve traction, destroyed the connection of the upper brain and the lower portion of the body, cutting the spinal cord completely." In sum, while we cannot say the jury delivered a verdict against the great weight of the evidence, the evidence was not so overwhelming as to render it implausible that evidence of Mr. Hill's probationary status affected the outcome of the trial.

## IV.

The District Court abused its discretion in admitting evidence of Mr. Hill's probationary status at trial, and this error resulted in prejudice to Ms. Bryant's case against Deputy Newman and Sheriff Mascara. Because this error independently warrants reversal, we need not reach Ms. Bryant's other arguments. We **REVERSE and REMAND** for further proceedings consistent with this opinion.

16